S02A1439. HARTWELL RAILROAD COMPANY v. BARNES et al.
(577 SE2d 566)

HUNSTEIN, Justice.

Appellees Barnes and McMurry brought suit to quiet title to land located at the intersection of I-85 and Georgia 17 in Franklin County. A railroad line runs through the property and appellees asserted that they own the property up to the railroad bed. Hartwell Railroad Company contended that its predecessor in title obtained fee simple ownership to 100 feet on each side of the railroad bed. A special master found in favor of appellees and the superior court adopted the special master's findings. The railroad appeals.

1. Documentary evidence established that when Samuel Knox died in 1870, his wife Mary received a life estate in the homeplace (which included the property in issue) with the couple's ten surviving children holding the remainder interest. Samuel Knox's will did not require the widow to make an election between a life estate and year's support. In 1878 the Elberton Air Line Railroad, appellant's predecessor in interest, received a deed from Mary Knox conveying in fee simple a 200 foot strip (100 feet on each side of the railroad bed) across the property. The deed conveyed only Mary Knox's life estate interest in the property.[1] The railroad did not exercise its eminent domain rights or otherwise obtain a deed from the widow conveying her year's support rights in the property. Deed records reflect that in 1879 one son conveyed his fractional interest in the homeplace property to Mary Knox, among others. No other pertinent documentary evidence from the relevant time period exists.

However, records established that when Mary Knox died in 1886, the homeplace property was included in her estate and treated by all parties as if she held it in fee simple rather than as merely a life estate. There is no evidence that the surviving children disputed in any manner the fact that the widow held fee simple title to the homeplace, even though that change in status eliminated their remainder interests under their father's will. Records reflect that the administrator of Mary Knox's estate petitioned the ordinary for an order permitting a sale of the homeplace, which was granted. The

---

[1] The railroad asserts it also acquired deeds from three of the children, but the children's deeds are copies from the railroad's files, only one of which bears any evidence of recording in Franklin County.

homeplace was divided into nine lots and sold at public sale in fee simple to nine separate purchasers, including a predecessor in title to appellees. The Knox children accepted the proceeds from the sale.

At the hearing before the special master, there was evidence that the Franklin County probate court records covering the relevant time period were incomplete. Appellees adduced testimony that many years earlier, a Franklin County probate judge who was working on a history of the county had borrowed numerous probate court records and that many of these records were destroyed in a fire at the judge's home.

The special master was thus called upon to determine how Mary Knox, who inherited only a life estate in 1870, had uncontrovertedly obtained fee simple ownership of the disputed property by the time of her death in 1886. This divestment of the title from the remaindermen and the vesting of title in the widow's estate did not occur as the result of conveyance of the land by deed because there were no deeds from the property records reflecting such conveyances.[2] However, Georgia law at the time provided another means whereby Mary Knox could obtain fee simple ownership of the homeplace without the matter being recorded in the county deed books. The widow would have been authorized to petition for year's support from the probate court and the property could have been awarded to her in fee simple as part of that support. Under Georgia law at the time, a petition for year's support could be brought within 20 years of the date of the husband's death. See *Nixon v. Nixon*, 196 Ga. 148 (26 SE2d 711) (1943). Although there were no records reflecting such a petition and award, appellees adduced the fire evidence to explain the absence of such records.

Faced with this evidence, the special master reasoned that the change in Mary Knox's ownership interest in the property, from life estate to fee simple, was the result of Mary Knox exercising her right to a year's support and obtaining fee simple title to the property as part of the award. Because the 1878 deed from Mary Knox to the railroad conveyed only her life estate in the property, the special master concluded in effect that the railroad's interest was superseded when the property was awarded in fee simple to the widow as year's support. The trial court adopted this conclusion and found in favor of appellees.

2. We agree with the special master that an award of year's sup-

---

[2] As appellees pointed out to the special master, had the property been conveyed to Mary Knox there should have been numerous recorded deeds, given the large number of Knox children who survived both parents. Furthermore, because some owners of remainder interests were minors, probate court approval would have been required to convey their interests.

port provides the best explanation, in light of the documentary evidence available, for why Mary Knox owned the property in fee simple at the time of her death. However, we do not agree that the existence of the year's support award necessarily demanded the special master's conclusion that that award divested the railroad of its interest in the property it purchased from Mary Knox. Among the documents adduced before the special master was the inventory of the property in the Mary Knox estate. That inventory reflects that she owned, inter alia, "One Tract of Land Known as the Home place 600 Acres in Said County, *on both Sides E.A.L.RR.* [Elberton Air Line Railroad]." (Emphasis supplied.) There was also documentary evidence, consisting of the newspaper notices of the sale of the nine lots into which the Mary Knox property was divided, that reveals the relevant property when sold was "traversed by the railroad."

This evidence establishing the uncontested existence of the railroad across Mary Knox's property raises a factual scenario inconsistent with the special master's explanation of the events. Had the year's support award to Mary Knox included fee simple ownership of the entire "home place," then her earlier conveyance to the railroad — even of the limited roadbed property — would have been superseded by that award. However, given the express recognition of the railroad's existence in both the Mary Knox estate inventory and the subsequent sale of the property, as well as the absence of any evidence that subsequent property owners objected to the presence of the railroad or sought any legal recourse to exclude the railroad from the property they purchased from the Knox Estate, it is more consistent with the evidence adduced to conclude that the award of year's support to Mary Knox excluded *at least* the limited amount of property on which the roadbed of the railroad was constructed. Whether or not the year's support award likewise excluded the remainder of the property (the 200 feet in issue now) sold by Mary Knox to the railroad in 1878 is less clear.

Our review of the special master's report reflects that he overlooked the significance of the exclusion of the roadbed property from the year's support award. While the special master properly concluded that Mary Knox obtained fee simple ownership of the property prior to her death through an award of year's support, he went no further in his analysis. We recognize that the findings of a special master, adopted by a trial court, will be upheld unless clearly erroneous. *Cooley v. McRae*, 275 Ga. 435 (569 SE2d 845) (2002). However, under the circumstances here, we conclude that the special master clearly erred when he failed to consider whether the roadbed property was excluded from the year's support award and, if so, whether that exclusion also encompassed the disputed property in issue here, i.e., the remainder of the property conveyed by Mary Knox to the rail-

road in 1878. Accordingly, we reverse the trial court's order adopting the special master's report.

3. As an independent basis for their claim that fee simple title in the disputed property was vested in them, appellees presented extensive evidence of adverse possession of the property against the railroad as a co-tenant. While the special master related certain testimony adduced in support of this claim in his report, he made no specific findings of fact about the claim and did not address it in his conclusions of law. Nor did the trial court reach the issue. Therefore, we are unable to use appellees' claim of adverse possession as a separate ground to uphold the trial court's ruling.

*Judgment reversed. All the Justices concur, except Fletcher, C. J., and Carley, J., who concur in Division 3 and in the judgment.*

DECIDED FEBRUARY 24, 2003.

*McClure, Ramsay, Dickerson & Escoe, Allan R. Ramsay,* for appellant.

*McLeod, Benton, Begnaud & Marshall, William C. Berryman, Jr.,* for appellees.